**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS DALLAS DIVISION**

| | | |
|---|---|---|
| **JAYA MATHEW PHD PLLC** | § | |
| **D/B/A WELLNESS 360** | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 3:25-CV-02403** |
| | § | |
| **BERKSHIRE HATHAWAY DIRECT** | § | |
| **INSURANCE COMPANY** | § | |
| **Defendant.** | § | |

### ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Jaya Mathew PHD PLLC d/b/a Wellness 360 ("Plaintiff" or "Mathew") on behalf of itself, upon personal knowledge as to itself, and upon information and belief as to other matters, files this breach of contract, violations of the Texas Insurance Code, and for violations of Texas Prompt Payment Act lawsuit against Berkshire Hathaway Direct Insurance Company ("Berkshire") and in support shows the Court as follows:

### I.      INTRODUCTORY STATEMENT

1.      In order to protect the consumers from wrongful actions perpetrated by insurance policy providers, the State of Texas has enacted various provisions and statutes designed to allow consumers to bring suit against the providers should the providers act in bad faith when settling and covering liability claims.

2.      Besides breach of contract claims, consumers may also bring claims under Chapter 541 of the Texas Insurance Code and Chapter 542, which set the standard by which insurance providers must conduct themselves when presented with a claim against an insurance policy.

3.      Per TX INS § 541.060, insurance providers can be held liable when they use unfair settlement practices by failing to settle a claim in a ". . . prompt, fair, and equitable . . ." manner.  Additionally, insurance providers act in bad faith when they fail to use reasonable

standards for investigating and settling a claim along with ". . . compelling a policyholder to institute a suit to recover an amount due under a policy by offering substantially less than the amount ultimately recovered in a suit by the policyholder" per TX INS § 542.003. Those found liable for violating the Insurance Code can be held liable for the amount due under the policy, interest, and attorney's fees.

4.      However, Defendant violated numerous provisions in both TX INS §541 and § 542, along with breaching the liability contract and acting in violation of DTPA provisions when they failed to properly investigate and settle a claim filed by Mathew against its insurance when a severe storm system struck the area where Mathew's place of business is located, bringing powerful winds and heavy rain. This weather event caused extensive damage to Mathew's business, compromising the roof's protective surface and affecting the overall integrity of the building envelope and much of the interior being damaged due to water intrusion.

5.      Accordingly, Plaintiff on behalf of itself bring this action to recover the fair amount due per the insurance policy, any appliable amounts of interest, treble damages, attorney's fees, and costs.

## II.      PARTIES

5.      Plaintiff, Jaya Mathew PHD PLLC d/b/a Wellness 360, a company located at 1340 Prudential Drive, Dallas, TX 75232.

6.      Defendant, Berkshire Hathaway Direct Insurance Company, is an incorporated business that may be served at its registered agent, Corporation Service Company, 211 E 7th Street, Ste. 620, Austin, TX 78701, or wherever else it may be found.

### III.    JURISDICTION AND VENUE

7.    Jurisdiction of this action is conferred upon this Court per 28 U.S.C. § 1332 because (1) there is complete diversity of citizenship between Plaintiff and Defendant, and (2) the value of the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

8.    In accordance with 28 U.S.C. § 1391, venue is proper in Dallas County, Texas because all or a substantial part of the events or omissions giving rise to the claims occurred in Dallas County, Texas.

### IV.    FACTS

9.    On or about May 28, 2024, a severe storm system struck the area where Mathew place of business is located, bringing powerful winds and heavy rain.

10.    The weather event caused extensive damage to Mathew's business, compromising the roof's protective surface and affecting the overall integrity of the building envelope and much of the interior being damaged due to water intrusion.

11.    The storm inflicted extensive damage throughout the property, creating countless structural issues that compromised both the exterior envelope and interior living spaces.

12.    The building's exterior metal and TPO roofing system bore the brunt of the storm's impact, sustaining severe damage that rendered the entire roofing assembly beyond repair and requiring complete replacement.

13.    The roof damage allowed significant water intrusion into the building's interior, where moisture penetrated the structural barriers and caused widespread damage to critical building components.

14.    The water infiltration saturated and compromised the drywall systems throughout the affected areas, necessitating complete removal and replacement of these interior wall surfaces.

15. Additionally, the hardwood flooring sustained irreparable water damage from the ongoing moisture exposure, requiring full removal and replacement to restore the interior spaces to their pre-loss condition.

16. The cumulative effect of this storm damage has fundamentally compromised the building's weather resistance and structural integrity, leaving the property vulnerable to future weather events and secondary damage.

17. To address these conditions and restore the building to a secure, habitable state, comprehensive repairs are required, including the complete replacement of the roofing system, full restoration of damaged interior walls and flooring, and replacement of affected electrical components, baseboards, and trim work that were damaged by the water intrusion and subsequent moisture exposure.

18. Mathew maintained an active insurance policy (Policy No. N9BP361475) with Berkshire that covered hailstorm and windstorm damage.

19. Mathew filed a claim with Berkshire, who acknowledged the claim and assigned it number N9BP361475-002-002-002.

20. Berkshire conducted an initial property inspection, with a representative documenting the loss but failed to provide any reports for Mathew.

21. Despite the extensive and well-documented storm damage affecting both the exterior and interior of the property, Berkshire failed to fulfill its fundamental obligation to make a good-faith settlement offer as mandated by state insurance regulations and the specific terms of the policy contract.

22. Rather than conducting a thorough investigation and providing fair compensation for the covered losses, the insurer instead issued a blanket denial of coverage based on a policy exclusion that was no longer applicable to Mathew's current policy terms.

23.    The denial was particularly egregious given that the cited exclusion had been removed or modified in Mathew's policy, making Berkshire's reliance on it both legally unfounded and factually incorrect.

24.    Mathew obtained an independent inspection from JL Contractors, which estimated repair costs at approximately $223,357.44.

25.    Mathew attempted to resolve the matter amicably through continued communication with Berkshire, but Berkshire denied requests for additional coverage and maintained their decision.

26.    Mathew retained legal counsel who sent a demand letter to Berkshire on May 1st, 2025. Berkshire failed to acknowledge the demand and did not respond.

27.    However, Berkshire's continued failure to provide adequate compensation has caused Mathew mental anguish due to fears of further property deterioration while necessary repairs remain incomplete.

### V.    CAUSE OF ACTION NO. ONE: BREACH OF CONTRACT

15.    All of the foregoing paragraphs and allegations are incorporated herein, as fully set forth verbatim.

16.    Berkshire entered into a valid and enforceable contract, or Insurance Liability Policy, with Jaya Mathew PHD PLLC d/b/a Wellness 360. The policy was valid at the time of the unexpected hailstorm and windstorm that caused damage to the Property and the policy covered the building located at 1340 Prudential Drive, Dallas, TX 75232 ("Building").

17.    The policy was active and effective during the unforeseen and damaging event.

18.    Mathew has paid their premiums for the Policy, as required by the Policy.

19.    The Building suffered a covered loss when the Building was struck by a severe storm system causing widespread damage across the property's exterior and interior.

20.    Berkshire breached the Policy by refusing to adequately cover the damage to Mathew's Building in a timely fashion and restore the Building as required under the Policy.

21.    Berkshire's breach of contract has caused damage to Mathew in an amount within the jurisdictional limits of this Court, estimated at approximately $223,357.44.

## VI.    CAUSE OF ACTION NO. TWO: DTPA AND DECEPTIVE INSURANCE PRACTICES

21.    All of the foregoing paragraphs and allegations are incorporated herein, as fully set forth verbatim.

22.    Berkshire also acted unfairly or deceptively through its refusal to adequately pay for a covered loss to the Property in a timely and effective manner in violation of Texas Insurance Code Chapter 541, including but not limited to §541.060, and/or Texas Insurance Code Chapter 542.003(b)(1)-(7).

23.    Berkshire dilatory tactics related to this claim are unreasonable and have unnecessarily delayed the restoration. As such, Berkshire has violated the Texas Insurance Code, including but not limited to, the following manners:

a.    misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;

    i.    They failed to provide accurate information about the current policy provisions applicable to the claim;

    ii.    They denied the claim based on an exclusion that had been removed from the policy through subsequent amendments or endorsements;

    iii.    The representatives making coverage determinations were not properly trained on or aware of material changes to the policy terms;

    iv.    This constitutes a violation of the insurer's duty to fairly represent policy provisions to claimants and demonstrates a failure in the insurer's internal procedures for ensuring claims handlers are properly informed about current policy terms before making coverage determinations.

b.    failing to acknowledge with reasonable promptness pertinent communication relating to a claim arising under the insurer's policy;

    i. The insurer consistently failed to provide timely updates on claim status when explicitly requested by the insured, leaving them uninformed about critical developments in their claim;

    ii. When the insured requested clarification about specific policy provisions relevant to coverage determination, the insurer unreasonably delayed providing this essential information;

    iii. This pattern of delayed communication prevented the insured from making informed decisions about their claim and potentially delayed the resolution process;

    iv. The insurer's conduct demonstrates a systematic failure to maintain reasonable communication standards as required by state insurance regulations, which typically mandates prompt acknowledgment of claim-related communications;

    v. This conduct constitutes unfair claims handling practices as it undermines the insured's right to transparent and timely information about their coverage and claim status, and may have caused additional damages through unnecessary delay of claim resolution.

c. failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

    i. After denying the claim, the insurer failed to furnish the policyholder with any inspection estimates, professional assessments, or detailed reports documenting the factual basis for their decision;

    ii. The denial notification lacked specific reference to the policy provisions, factual findings, and logical reasoning that formed the basis for the coverage decision;

    iii. The insurer's communications contained only conclusory statements regarding claim denial without the transparent explanation required by law;

    iv. This lack of substantive explanation prevented the policyholder from effectively evaluating the legitimacy of the denial or preparing an informed appeal;

    v. The insurer's conduct deprived the policyholder of their right to understand how the policy terms were being applied to their specific claim circumstances;

    vi. This behavior represents a serious violation of the insurer's obligation to treat policyholders fairly and transparently.

d. failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurer's policies;

    i.   Following the initial inspection, the insurer created an unnecessary delay by requiring an engineering assessment without timely scheduling. Contacting the insured about a month after the initial inspection;

    ii.   The insurer failed to provide any documentation, reports, or estimates resulting from either the inspection or engineering assessment, demonstrating a lack of transparency in the claims investigation;

    iii.   The insurer's internal communication systems were deficient, as evidenced by their failure to inform their own engineering consultant about the claim decision;

    iv.   This pattern demonstrates the insurer's failure to maintain reasonable internal standards and procedures for timely claim investigation. The cumulative effect of these delays substantially prejudiced the insured by extending the claim resolution process well beyond

e.   not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear;

    i.   The insurer issued an outright denial without first engaging in any good faith negotiation or settlement discussions with the insured;

    ii.   The insurer failed to provide any breakdown or itemization of covered versus noncovered damages, preventing the insured from understanding which portions of the claim might be eligible for partial payment;

    iii.   The denial was issued as a blanket rejection without acknowledging elements of the claim that may have merited compensation under the policy terms;

    iv.   The insurer's approach demonstrated a rigid "all-or-nothing" stance rather than the good faith effort to find equitable resolution required by insurance regulations;

    v.   This conduct suggests the insurer prioritized claim denial over fair evaluation, contrary to the requirement that insurers attempt to effectuate equitable settlements when liability for at least some portion of the claim has become reasonably clear.

f.   compelling a policyholder to institute a suit to recover an amount due under a policy by offering substantially less than the amount ultimately recovered in a suit brought by the policyholder;

    i.   The insurer has engaged in conduct that effectively forces litigation by refusing to make any reasonable settlement offer, thereby compelling the policyholder to pursue legal action as their only recourse for recovery;

    ii.   The insurer's complete refusal to offer any settlement amount whatsoever, despite coverage obligations under the policy, leaves the policyholder with no alternative but to initiate litigation;

     iii.  The insurer's position creates an unreasonable imbalance of power, exploiting the financial and emotional strain of litigation to avoid fulfilling contractual obligations;

     iv.  This behavior violates the core principle that insurance claims should be resolved through good faith negotiation rather than adversarial proceedings whenever possible.

g.  committing another act the commissioner determines by rule constitutes an unfair claim settlement practice.

     i.  The insurer's handling of this claim exhibits a pattern of conduct that, upon regulatory examination, is likely to reveal additional violations of unfair claims settlement practices beyond those specifically enumerated in statute;

     ii.  The cumulative effect of the insurer's actions demonstrates a systematic approach designed to frustrate legitimate claims rather than fulfill the insurer's contractual obligations;

     iii.  The totality of circumstances suggests the insurer has prioritized claims denial over fair evaluation in a manner that violates the spirit and intent of insurance regulations;

     iv.  A thorough regulatory investigation could potentially uncover additional violations related to documentation practices, training deficiencies, compensation structures that incentivize improper denials, or other institutional issues that contribute to unfair claims handling.

24.    Defendant misrepresented an insurance policy as prohibited by Section 541.061 or the Texas Insurance Code, to wit:

a.  making an untrue statement of material fact;

b.  making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

c.  failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; and

d.  failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of the Texas Insurance Code.

25.    <u>Producing Cause.</u> Mathew would show that the acts, practices and/or omissions complained of were the producing cause of Mathew's damages as more fully described in this Complaint.

26.     Furthermore, Defendant violated the Texas Business & Commerce Code §17.46(b) by engaging in false, misleading, and deceptive practices. Defendant violated the statute through their actions as outlined above. Mathew, through signing the insurance policy and paying premiums, relied on the fact that Defendant would cover the damages caused by the storm, as stated in the policy.

27.     Reliance. Mathew would further show the acts, practices and/or omissions complained of under Section 17.46(b) of the Texas Business and Commerce Code and Chapter 541 of the Texas Insurance Code were relied upon by Mathew to Mathew's detriment.

28.     Written Notice Given. Mathew has timely notified Defendant of such complaint pursuant to Section 17.505(a) of the Texas Business and Commerce Code and Section 541.154 of the Texas Insurance Code by letter dated May 1, 2025, and would show compliance with all conditions precedent to the filing of this suit and recovery of additional damages and attorney's fees.

## VII.    CAUSE OF ACTION NO. THREE: TEXAS PROMPT PAYMENT ACT

28.     All of the foregoing paragraphs and allegations are incorporated herein, as fully set forth verbatim.

29.     Mathew would further show that Berkshire's conduct constitutes one or more violations of the Texas Insurance Code Prompt Payment of Claims Act (TPPCA). Said claims are actionable under Texas Insurance Code § 542.060.

30.     Berkshire's handling of Mathew's claim violates the Texas Prompt Payment of Claims Act, which establishes specific deadlines and procedures insurers must follow when processing claims.

31.     Berkshire's violations include unreasonable delays in claim resolution, failure to conduct adequate investigations within statutory timeframes, and failure to make prompt, good-faith settlement offers when liability became reasonably clear.

32.     Texas Insurance Code § 542.060 provides a private right of action for policyholders to recover damages when insurers violate these prompt payment requirements, making Berkshire liable for their non-compliance with statutory claim-handling obligations.

33.     Finally, Berkshire's delay of the payment for Mathew's claim following its receipt of all items, statements, and forms reasonably requested and required constitutes a violation of the TPPCA per Tex. Ins. Code § 542.058.

## VIII.   REQUEST FOR JURY TRIAL

33.     Jaya Mathew PHD PLLC d/b/a Wellness 360 hereby requests a trial by jury and has paid the jury fee in conjunction with the filing of this Original Complaint.

## IX.     DAMAGES

34.     All of the foregoing paragraphs and allegations are incorporated herein, as fully set forth verbatim.

35.     The above actions of Defendants constitute a producing cause of the economic damages and damages for mental anguish of Mathew.

36.     Jaya Mathew PHD PLLC d/b/a Wellness 360 would show that the false, misleading and deceptive acts, practices and/or omissions complained of herein were committed "knowingly" in that Berkshire had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

37.     Therefore, Jaya Mathew PHD PLLC d/b/a Wellness 360 is entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code or in the alternative via Texas Insurance Code Sec. 541.152(b).

38.     Jaya Mathew PHD PLLC d/b/a Wellness 360 is also entitled to recover all interest related to the claim pursuant to Texas Insurance Code Prompt of Claims Act (TPPCA) under Texas Insurance Code § 542.060.

39.     Mathew is entitled to recover reasonable and necessary attorney fees and costs per Texas Insurance Code and DTPA.

40.     Mathew is entitled to recover any additional costs incurred from the delays in action by Defendant including interest and damages from any delay.

## X.     CONDITIONS PRECEDENT

42.     All conditions precedent to Mathew bringing of these claims have been performed and met, and/or have occurred.

## XI.     CONCLUSION & PRAYER

43.     For these reasons, Mathew respectfully prays for judgment against the Defendants that the Court, after notice and final hearing:

a.   enter judgment in favor of Jaya Mathew PHD PLLC d/b/a Wellness 360, and against Berkshire on all claims asserted by Jaya Mathew PHD PLLC d/b/a Wellness 360;

b.   all costs of its action be adjudged against Berkshire;

c.   award a judgment in favor of Jaya Mathew PHD PLLC d/b/a Wellness 360 and against Berkshire for actual, economic, and/or compensatory damages together with pre- and post-judgment interest to the full extent permitted by law;

d.   award damages in favor of Jaya Mathew PHD PLLC d/b/a Wellness 360 and against Berkshire for mental anguish. *Universal Life Ins. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997);

e.   award exemplary damages in favor of Jaya Mathew PHD PLLC d/b/a Wellness 360 and against Berkshire pursuant to Tex. Civ. Prac. & Rem. Code §41.003;

f.   award judgment in favor of Jaya Mathew PHD PLLC d/b/a Wellness 360 and against Berkshire for either double or treble actual damages pursuant to Tex. Bus. & Com. Code §17.50(b)(1);

g.  award a judgment in favor of Jaya Mathew PHD PLLC d/b/a Wellness 360 and against Berkshire for reasonable and necessary attorney's fees; and

h.  grant Jaya Mathew PHD PLLC d/b/a Wellness 360 such and further relief, at law or in equity, to which they may be shown lawfully entitled.

Respectfully submitted,

Martinez Hsu, P.C.
4001 Airport Fwy., Ste. 150
Bedford, TX 76021
Tel: (682) 224-7810
Fax: (682) 730-8998

/s/ Michael S. Martinez
Michael S. Martinez
Bar no: 24078933
Email: msmartinez@mhlegalgroup.com
Attorney for Jaya Mathew PHD PLLC d/b/a Wellness 360