IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAYA MATHEW PHD PLLC D/B/A WELLNESS 360, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:25-cv-2403-K |
| | § | |
| BERKSHIRE HATHAWAY DIRECT INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER ON**
**PENDING EXPERT MOTIONS**

The motions below have been referred by United States District Judge Ed Kinkeade to the undersigned United States magistrate judge for hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 43.

Defendant Berkshire Hathaway Direct Insurance Company ("BHDIC") has filed the following motions to strike the opinions and testimony of Plaintiff Jaya Mathew PHD PLLC, doing business as Wellness 360's ("Mathew") experts:

- Opposed Motion to Strike the Opinions and Testimony of Plaintiff's Non-Retained Testifying Expert Justin Johnson [Dkt. No. 37] and
- Opposed Motion to Strike the Opinions and Testimony of Plaintiff's Retained Testifying Expert "WH Coltzer c/o Benjamin Scales" [Dkt. No. 40].

For the reasons and to the extent explained below, the Court:

- Grants the Opposed Motion to Strike the Opinions and Testimony of Plaintiff's Non-Retained Testifying Expert Justin Johnson [Dkt. No. 37] and
- Grants in part and denies in part the Opposed Motion to Strike the Opinions and Testimony of Plaintiff's Retained Testifying Expert "WH Coltzer c/o Benjamin Scales" [Dkt. No. 40].

*See Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 346 n.2 (5th Cir. 2020) (the admissibility of an expert report is "a non-dispositive matter," which can be "'referred to a magistrate judge to hear and decide'" under Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A)).

## Legal Standards

### I. Federal Rule of Evidence 702

> Federal Rule of Evidence 702 governs the admissibility of expert testimony as evidence. Rule 702 permits opinion testimony from a witness "qualified as an expert by knowledge, skill, experience, training, or education" if the expert's knowledge will assist the trier of fact, and (1) "the testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case."

*VeroBlue Farms USA Inc. v. Wulf, No.* 3:19-cv-764-X, 2023 WL 348963, at *6 (N.D. Tex. Jan. 20, 2023) (quoting *Ramos v. Home Depot Inc.*, No. 3:20-cv-1768-X, 2022 WL 615023, at *1 (N.D. Tex. Mar. 1, 2022) (cleaned up)).

"In its gatekeeping role, the Court determines the admissibility of expert testimony based on Rule 702 and [*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993),] and its progeny." *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 800 (N.D. Tex. 2018), *aff'd*, No. 3:11-cv-3296-L, 2018 WL 2064126 (N.D. Tex. May 2, 2018). Under Rule 702 and *Daubert*,

> [a]s a gatekeeper, this Court must permit only reliable and relevant testimony from qualified witnesses to be admitted as expert testimony. The party offering the expert testimony has the burden of proof, by a preponderance of evidence, to show that the testimony is reliable and relevant.

*Ramos*, 2022 WL 615023, at *1 (cleaned up). And "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Applying this analytical framework under Rule 702 and *Daubert*, a "court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 759 (N.D. Tex. 2021).

"First, an expert must be qualified. Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his knowledge, skill, experience, training or education." *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-cv-823-D, 2022 WL 3019795, at *5 (N.D. Tex. July 29, 2022) (cleaned up). "The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Holcombe v. United States*, 516 F. Supp. 3d 660, 679-80 (W.D. Tex. Feb. 2, 2021) (cleaned up); *accord Arnold v. Allied Van Lines, Inc.*, No. SA-21-cv-438-XR, 2022 WL 2392875, at *18 (W.D. Tex. July 1, 2022) ("Testimony regarding first-hand, historical perceptions constitutes lay, not expert, opinion testimony."). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on

a given subject." *Aircraft Holding*, 2022 WL 3019795, at *5 (cleaned up).

And, if the expert is qualified, "Rule 702 charges trial courts to act as gate-keepers, making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. Expert testimony must be both relevant and reliable to be admissible." *Hall v. State*, No. CV H-21-1769, 2022 WL 2990912, at *4 (S.D. Tex. July 28, 2022) (cleaned up).

> Expert testimony is relevant if it assists the trier of fact in understanding the evidence or determining a fact in issue. Federal Rule of Evidence 401 further clarifies that relevant evidence is evidence that has "any tendency to make a fact more or less probable than it would be without evidence" and "is of consequence in determining the action."

*Id.* (cleaned up). "Relevance depends upon whether [the expert's] reasoning or methodology properly can be applied to the facts in issue." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up). "To be relevant, the expert's reasoning or methodology [must] be properly applied to the facts in issue." *In re: Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022) (cleaned up).

"When performing [the required gate-keeping Rule 702 and *Daubert*] analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019). "Assisting the trier of fact means the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument," but "the helpfulness threshold is low: it is principally ... a matter of relevance." *Id.* at 293-94 (cleaned up).

As to reliability, the required "analysis applies to all aspects of an expert's

testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia," and "mandates that expert opinion be grounded in the methods and procedures of science." *Jacked Up*, 291 F. Supp. 3d at 801 (cleaned up). "Expert evidence that is not reliable at each and every step is not admissible." *Jacked Up*, 807 F. App'x at 348 (cleaned up). "Expert testimony is reliable if the reasoning or methodology underlying the testimony is scientifically valid." *Ramos*, 2022 WL 615023, at *1 (cleaned up).

"Such testimony must be more than subjective belief or unsupported speculation." *Id.* (cleaned up). "In other words, this Court need not admit testimony that is connected to existing data only by the *ipse dixit* [– that is, an unproven and unsupported assertion resting only on the authority –] of the expert." *Id.* (cleaned up). "[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Holcombe*, 516 F. Supp. 3d at 687 (cleaned up).

"Experts are permitted to rely on assumptions when reaching their opinions," but "those assumptions must have some factual basis in the record and an underlying rationale." *Jacked Up*, 291 F. Supp. 3d at 806-07 (cleaned up). "But there is no requirement that an expert derive his opinion from firsthand knowledge or observation." *Id.* at 801 (cleaned up). More specifically, "[e]xperts are permitted to assume the fact of liability and opine about the extent of damages," and "[a]n expert's reliance on assumptions does not itself make the expert opinion unreliable or inadmissible." *ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, No. CV H-16-2746, 2018 WL 1877015, at *8 (S.D. Tex. Apr. 19, 2018) (cleaned up).

And Federal Rule of Evidence 703 "permit[s] an expert witness to base his opinion on 'facts or data ... that the expert has been made aware of or personally observed' and to opine [and base his opinion] on inadmissible evidence if 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 269 & n.10 (cleaned up). More specifically, courts have concluded that, although a party's damages expert "did not personally observe the facts or data in [another expert's report], as a damages expert, he may rely on hearsay, including other expert reports, in forming his opinions." *ENGlobal*, 2018 WL 1877015, at *11 (cleaned up).

Still, "Rule 702 and *Daubert* require an expert witness independently to validate or assess the basis for his or her assumptions," and "[t]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable," which "requires some objective, independent validation of the expert's methodology." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"Although the basis of an expert's opinion usually goes to the weight and not the admissibility of expert testimony, in some cases the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion. In the words of the Third Circuit, the suggestion that the reasonableness of an expert's reliance on facts or data to form his opinion is somehow an inappropriate inquiry under Rule 702 results from an unduly myopic interpretation of Rule 702 and ignores the mandate of *Daubert* that the district court

must act as a gatekeeper." *Jacked Up*, 807 F. App'x at 348 (cleaned up). "In some circumstances, an expert might be able to rely on the estimates of others in constructing a hypothetical reality, but to do so, the expert must explain why he relied on such estimates and must demonstrate why he believed the estimates were reliable." *Id.* at 348-49 (cleaned up). "The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"The Court normally analyzes questions of reliability using the five nonexclusive factors known as the *Daubert* factors, [which are (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community]." *Ramos*, 2022 WL 615023, at *1 & n.11 (cleaned up). "But these factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kim v. Nationwide Mut. Ins. Co.*, No. 3:21-cv-345-D, 2022 WL 2670393, at *5 (N.D. Tex. July 11, 2022) (cleaned up). "The point of this inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Holcombe*, 516 F. Supp. 3d at 674 (cleaned up).

"The Court also does not need to admit testimony based on indisputably wrong facts." *Ramos*, 2022 WL 615023, at *1 (cleaned up). "The Fifth Circuit has recognized that '[t]he *Daubert* reliability analysis applies to, among other things, "the facts underlying the expert's opinion,"' and "an opinion based on 'insufficient, erroneous information, fails the reliability standard.'" *Jacked Up*, 291 F. Supp. 3d at 802 (cleaned up). "And although the *Daubert* reliability analysis is flexible and the proponent of the expert evidence need not satisfy every one of its factors, the existence of sufficient facts ... is in all instances mandatory." *Id.* (cleaned up).

But, "[i]n conducting its analysis, the Court focuses on the reasonableness of the expert's approach regarding the matter to which his testimony is relevant and not on the conclusions generated by the expert's methodology." *Ramos*, 2022 WL 615023, at *1 (cleaned up). A motion to exclude is not properly based on an "objection that goes to whether [the proffered expert's] opinion is correct, not whether it is reliable," where "[t]he proponent need not prove to the judge that the expert's testimony is correct, but," rather, "by a preponderance of the evidence that the testimony is reliable." *Aircraft Holding*, 2022 WL 3019795, at *8 (cleaned up). "Even when a court rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable." *United States v. Hodge*, 933 F.3d 468, 477 (5th Cir. 2019), as revised (Aug. 9, 2019) (cleaned up). And, so, "[w]hen the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *ENGlobal*, 2018 WL 1877015, at *8 (cleaned up).

The Court cannot accept arguments that "urge[ ] the Court to establish an unattainable goalpost, essentially arguing that each item of expert testimony is unreliable insofar as it fails to conclusively prove [the expert testimony's proponent's] theory of its case or an element of a claim or defense," and thereby "confus[e] admissibility with sufficiency, and sufficiency with certainty." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). That "is not the standard for admissibility," or "even the standard for success on the merits," and "[i]t is not the Court's role, in the context of a *Daubert* motion, to judge the conclusions that an expert's analysis generates; the ultimate arbiter of disputes between conflicting opinions is the trier of fact." *Id.*

"If, however, there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered, the court may exclude the testimony as unreliable." *Kim*, 2022 WL 2670393, at *5 (cleaned up). For example, "the Court may exclude [an expert witness's] analysis if the studies that he relies on are so dissimilar to the facts presented that [the expert witness's] opinions cannot be sufficiently supported by the studies." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). "But the notion that expert testimony is only admissible to the extent that it is based on studies of identical individuals under identical circumstances would not only turn the 'flexible' inquiry envisioned under Rule 702 on its head, but such rigid constructions of reliability and relevance would defeat the very purpose of expert testimony: to help the trier of fact understand and evaluate the evidence." *Id.* at 676-77 (cleaned up).

And "[o]ther evidentiary rules, such as [Federal Rule of Evidence] 403, may still operate to exclude the evidence." *United States v. Posado*, 57 F.3d 428, 435 (5th

Cir. 1995) (citing *Daubert*, 509 U.S. at 595). Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The "evidentiary gates [provided by Rule 702 and *Daubert*] exist to keep out error that may impermissibly affect the jury" and "to protect juries from unreliable and irrelevant expert testimony." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 264, 268. But "[t]he court's inquiry is flexible in that [t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up). And, "[p]articularly in a jury trial setting, the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role – the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration. Thus, [w]hile the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, the rejection of expert testimony is the exception rather than the rule." *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (cleaned up).

And "[t]he Fifth Circuit has noted that [a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration," and, "[a]ccordingly, [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

means of attacking shaky but admissible evidence." *Ramos*, 2022 WL 615023, at *3 (cleaned up). Generally, an opposing party's "doubts about the bases for [an expert's] opinions do not render his opinions so unsupported as to create 'too great an analytical gap' between the evidence he relies on and his opinions." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up).

## II. <u>Federal Rules of Civil Procedure 26 and 37</u>

Federal Rule of Civil Procedure 26(a)(2) governs disclosure of expert testimony. In addition to initial disclosures, a party must disclose to the other parties the identity of any witness that it may use at trial to present expert evidence. *See* FED. R. CIV. P. 26(a)(2)(A).

If the witness is one retained or specially employed to provide expert testimony in the case, the report must contain, among other things, "a complete statement of all opinions the witness will express and basis and reasons for them" and "the facts or data considered by the witness in forming them." *See* FED. R. CIV. P. 26(a)(2)(B).

If an expert is not required to provide a report, the disclosure must still provide "a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C). "A 'summary of opinions' under Rule 26(a)(2)(C) means 'a brief account of the main opinions of the expert, and that the opinions must state a view or judgment regarding a matter that affects the outcome of the case.'" *Tidwell v. Gomez*, No. 5:19-cv-179-H, 2022 WL 20686845, at *2 (N.D. Tex. Aug. 12, 2022) (cleaned up). And "it does not suffice to reference large bodies of material sources of facts without stating a brief account of the main points from those large bodies on

which the expert relies." *Id.*

As to allegedly untimely supplemental expert reports, Federal Rule of Civil Procedure 26(e)(1) provides that "[a] party who has made a disclosure under Rule 26(a) … must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure … is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." *VeroBlue Farms*, 2023 WL 348963, at *10.

"[T]he line between supplemental opinions and new opinions is not always clear, and the decision regarding how to make the distinction … depends on the facts of the case." *Aircraft Holding*, 2022 WL 3019795, at *2 (cleaned up).

But "[c]ourts routinely reject untimely 'supplemental' expert testimony where the opinions are based upon information available prior to the deadline for expert disclosures and disclosure 'departs from [or] expands upon [the] original report in [any] material respects." *Holcombe*, 516 F. Supp. 3d at 670 (cleaned up). "The purpose of supplementary disclosures is just that – to supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline." *Aircraft Holding*, 2022 WL 3019795, at *2 (cleaned up). "Thus [w]hen the analysis and opinions in the second report [are] largely new rather than supplementary, they cannot qualify as a supplemental expert report under Rule 26(e)." *Id.* (cleaned up).

Federal Rule of Civil Procedure 37(c)(1) provides that, "[i]f a party fails to

provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

"Substantial justification for the failure to make a required disclosure has been regarded as justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure [obligation]." *Olivarez v. GEO Grp., Inc.*, 844 F.3d 200, 205 (5th Cir. 2106) (cleaned up). The failure to disclose must have had a "reasonable basis both in law and fact." *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

And courts have held that a failure to disclose a witness or evidence is "substantially justified" under Rule 37(c) where the disclosing party had no knowledge of the person or evidence until after the discovery deadline has passed. *See, e.g.*, *In re Advanced Modular Power Sys., Inc.*, 413 B.R. 643, 661 (Bankr. S.D. Tex. 2009) (citing *Silchia v. MCI Telecomms. Corp.*, 942 F. Supp. 1369, 1377 (D. Colo. 1996)). Courts have also declined to exclude evidence or witnesses where the opposing party knew or should have known of an exhibit and its contents or the identity of a person and the scope of her testimony well before trial. *See Kellogg Brown & Root Int'l, Inc. v. Altanmia Commercial Marketing Co. W.L.L.*, Civ. A. No. H-07-2684, 2008 WL 5114962, at *15 n.22 (S.D. Tex. Dec. 3, 2008).

"In evaluating whether a violation of Rule 26 is harmless, the court examines four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party

of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. The court considers the four-factor test holistically. It does not mechanically count the number of factors that favor each side." *Fuller v. CIG Fin., LLC*, No. 3:22-cv-1289-D, 2023 WL 8482889, at *2-*3 (N.D. Tex. Dec. 7, 2023) (cleaned up).

The disclosing party bears the burden of proving the failure to timely disclose was substantially justified or harmless. *See Lopez v. Fun Eats and Drinks, LLC*, No. 3:18-cv-1091-X, 2021 WL 3502361, at *4 (N.D. Tex. July 16, 2021); *accord Coleman v. Chevron Phillips Chem. Co. LP*, No. CV H-23-350, 2024 WL 460248, at *9 (S.D. Tex. Feb. 6, 2024); *Fuller*, 2023 WL 8482889, at *3.

**Analysis**

**I. <u>Motion to Strike Plaintiff's Expert Johnson</u>**

BHDIC moves to strike the opinions and testimony of Mathew's non-retained expert Justin Johnson under Federal Rules of Evidence 702 and 403 and Federal Rule of Civil Procedure 26(a)(2)(C). *See* Dkt. No. 37.

**A. Johnson's testimony is relevant and admissible under Rule 403.**

BHDIC contends that Johnson's opinions should be excluded because they are not relevant. *See* Dkt. No. 38 at 19-21. And it contends that Johnson's "estimate will cause unfair prejudice, confusion, and may mislead a jury." *Id.* at 21. After reviewing Johnson's report [Dkt. No. 39-5 at 1-3], the Court disagrees.

Regarding relevance, BHDIC argues that Johnson "made no attempt to rely on [WH] Coltzer's opinions regarding damages in preparing his estimate." Dkt. No. 38

at 20. And, with respect to Rule 403, it argues that "Mathew's designated causation expert does not agree with Johnson's scope of damages." *Id.*

But these issues go to weight, not admissibility. Insofar as Johnson's scope of damages is inconsistent with other expert opinions, BHDIC may cross-examine him about that issue at trial. *See ENGlobal*, 2018 WL 1877015, at *8 ("[I]t is not the role of the trial court to evaluate the correctness of facts underlying one's expert testimony." (cleaned up)).

And the risk that Johnson's estimate will cause unfair prejudice, confusion, or mislead the jury does not substantially outweigh the probative value of his testimony.

And, so, the Court finds that Johnson's testimony is relevant and not subject to exclusion under Rule 403. *See Gerstman v. Crestbrook Ins. Co.*, No. 3:24-cv-635-D, 2025 WL 1644533, at *4 (N.D. Tex. June 9, 2025) (finding that expert's estimate was relevant "[b]ecause there remains a genuine issue of fact as to whether [defendant] was required to pay the cost of replacing the entire roof in the absence of the availability of matching tiles"); *see also Strong v. Paradise*, No. 3:23-cv-2847-K, 2025 WL 3136582, at *9 (N.D. Tex. Nov. 10, 2025) (finding that Rule 403 "does not warrant excluding [expert's] opinion" where "the probative value of [ ] [his] testimony is not outweighed by the danger of confusing the jury").

**B. But the Court strikes Johnson under Rule 26(a)(2)(C).**

Regarding the required disclosures for non-retained experts under Rule 26(a)(2)(C), another judge in this district recently explained that

> Rule 26(a)(2)(A) requires parties to disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence

> 702, 703, 705." If the expert witness is not required to provide a written report, the party's disclosure must provide "the subject matter on which the witness is expected to testify" and "a summary of the facts and opinions to which the witness is expected to testify." The advisory committee report notes clarify that Rule 26(a)(2)(C) "mandate[s] summary disclosures of the opinions to be offered by the expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions." While this summary is "considerably less extensive than the report required by Rule 26(a)(2)(B)[,] and [c]ourts must take care against requiring undue detail," "[t]his less extensive disclosure standard … does not obviate the need to provide the disclosures expressly required by this rule."

*Fracalossi v. MoneyGram Pension Plan*, No. 3:17-cv-336-X, 2021 WL 5505604, at *13 (N.D. Tex. Nov. 24, 2021) (cleaned up).

Rule 26(a)(2)(C) "is intended to ensure that an opposing party has some notice of what an expert witness who is not retained or specially employed will testify about," and "[t]he disclosure must at least state opinions, not merely topics of testimony[,] and contain … a summary of the facts upon which the opinions are based." *Aircraft Holding*, 2022 WL 3019795, at *5 (cleaned up).

"[T]he requirement of a 'summary' may be satisfied by an abstract, abridgement, or compendium of the opinion and facts supporting the opinion," and "[t]he court must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." *Id.* (cleaned up).

1. Mathew's disclosure of Johnson failed to comply with Rule 26(a)(2)(C).

BHDIC argues that "Mathew failed to properly disclose Johnson as her expert" because Johnson's "disclosure is merely a list of topics that he will testify to, without any actual opinion or the factual basis for the opinion." Dkt. No. 38 at 10-11.

Johnson's expert disclosure is as follows:

> Mr. Johnson may be called to testify as to (1) the process and work history he and his company have provided to the property in question and the owner; (2) the conditions of the property before and after any weather-related damages occurred; (3) costs and repairs methods necessary to restore the property to pre-storm conditions. Mr. Johnson is, in part, upon their expertise as a roofer with many years in the industry. [Johnson] will offer rebuttal testimony responding to the opinions expressed by Defendant's designated expert(s).

Dkt. No. 31 at 3-4.

This disclosure "broadly identifies the subject matter [of Johnson's] expected testimony" but "does not state what his opinions are regarding any of the topics he identifies"; "does not state what his view or judgment is regarding any of the topics he identifies in his disclosure"; and "does not articulate a summary of the facts supporting any of his opinions, as required by Rule 26(a)(2)(C)." *VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-cv-764-X, 2023 WL 348016, at *12 (N.D. Tex. Jan. 20, 2023) (cleaned up); *cf. Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, No. 3:14-cv-1028-D, 2017 WL 90366, at *3 (N.D. Tex. Jan. 10, 2017) (finding disclosure sufficient under Rule 26(a)(2)(C) where "disclosures state[d] opinions, not merely topics").

Mathew argues that "Johnson's March 12, 2026, estimate was provided to BHDIC along with the expert disclosure" and that "[t]his estimate contains specific factual information supporting his opinions, including the types of repairs needed, the quantities of materials, and the estimated costs." Dkt. No. 51 at 11. But Johnson's estimate, which provides line-item estimates of repair costs with brief descriptions, is not sufficient to meet Rule 26(a)(2)(C)'s requirements. *See Cmty. of Hope Methodist Church v. Church Mut. Ins. Co.*, No. 4:24-cv-656-O, 2025 WL 3762070, at *4 (N.D.

Tex. Dec. 30, 2025) (finding that plaintiff's non-retained expert disclosure summarizing property damages "do not provide the requisite summary of facts that the expert relied on in forming the opinion" and that "[p]laintiff's reference to [the expert's] report is unavailing because the report is simply a series of line-item estimates" and "provides no basis for the values included in the estimates").

And, so, the Court will now evaluate whether Mathew's noncompliance with Rule 26(a)(2)(C) – that is, her failure to properly disclose Johnson as a non-retained expert – was substantially justified or harmless.

2. <u>Mathew's noncompliance was neither substantially justified nor harmless.</u>

With respect to substantial justification, Mathew does not explain, in her response to BHDIC's motion to strike Johnson's opinions and testimony, why her disclosure of Johnson as a non-retained expert was deficient. *See* Dkt. Nos. 50 & 51. For example, she does not state that she had issues with obtaining information from Johnson or any circumstances beyond her control that affected her ability to properly disclose Johnson. *See id.*

And, so, the Court finds that Mathew's failure to properly disclose Johnson as her expert was not substantially justified. *See Goodson v. Nasco Healthcare Inc.*, No. 3:21-cv-1467-N, 2025 WL 1260816, at *5 (N.D. Tex. Apr. 30, 2025) (finding that plaintiff's failure to properly disclosure was not substantially justified because he "supplie[d] no argument or explanation to show why this failure was substantially justified").

The Court also finds that Mathew's noncompliance was not harmless,

considering (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose.

*a. Importance of the Evidence*

BHDIC asserts that Johnson's "cost opinions are not important because he will merely opine as to the cost of damage he believes is necessary to Mathew's property without any connection to a covered event under the policy." Dkt. No. 38 at 15.

The Court disagrees. Even if the estimate "exceeds the scope of damage," the cost of repairs is required to determine the amount of coverage due under the insurance policy. *See Snyder Senior Citizens Inc. v. Third Coast Ins. Co.*, No. 5:23-cv-276-H, 2025 WL 1782575, at *4 (N.D. Tex. June 12, 2025) (finding that expert's report is important because it provides the cost of repairs which "is essential to determining whether [defendant]'s denial of coverage was justified").

BHDIC also asserts that Johnson's "causation opinions are not important because Mathew has designated other experts to opine on causation." Dkt. No. 38 at 15. Indeed, Mathew has designated a representative from WH Coltzer ("Coltzer") to testify as to "why and how weather-related events did or have damaged the property in question." Dkt. No. 31 at 2. And, so, the Court agrees that Johnson's opinions about causation are not important. *See H5R, LLC v. Scottsdale Ins. Co.*, No. 3:23-cv-1197-K-BN, 2025 WL 71820, at *3 (N.D. Tex. Jan. 10, 2025) (finding that the first factor favored exclusion where "[expert]'s testimony is duplicative or of minimal importance" because another expert's report provided opinions regarding causation).

But, because of the importance of Johnson's cost opinions, the Court finds that the first factor weighs slightly in favor of including Johnson's testimony and report.

*b. Prejudice to the Opposing Party of Including the Evidence*

"Generally, we find prejudice when a party's case-in-chief is seriously and gravely impacted." *Calsep A/S v. Dabral*, 84 F.4th 304, 314 (5th Cir. 2023) (citing *Bell v. Texaco, Inc.*, 493 F. App'x. 587, 593 (5th Cir. 2012) (per curiam) ("[W]e consider whether the other party's preparation for trial was substantially prejudiced." (cleaned up))).

Mathew argues that "BHDIC suffered no prejudice" given that "[it] deposed Mr. Johnson, cross-examined him on every aspect of his opinions, and obtained detailed explanations of his methodologies and factual bases." Dkt. No. 51 at 13.

Mathew filed her expert designation on March 12, 2026, *see* Dkt. No. 28, and she filed an amended designation on April 10, 2026, *see* Dkt. No. 31. But Johnson was not deposed until May 4, 2026. *See* Dkt. No. 51 at 11. And "Rule 26(a)(2) does not allow parties to cure deficient expert designations by supplementing them with later deposition testimony. The purpose of Rule 26(a)(2) is to provide notice to opposing counsel – before the deposition – as to what the expert witness will testify." *Valenzuela v. City of Haltom City*, No. 4:10-cv-127-Y, 2012 WL 13024705 (N.D. Tex. Jan. 31, 2012) (quoting *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008)).

And, so, the Court concurs with BHDIC that "the deficient designation precluded BHDIC from offering rebuttal evidence from its own experts because Johnson's designation did not fully explain or summarize his opinions." Dkt. No. 38

at 17.

And the prejudice that BHDIC has faced weighs in favor of excluding Johnson's testimony and report. *See Zebra Techs. Corp. v. OnAsset Intel., Inc.*, No. 3:21-cv-55-K, 2025 WL 1942128, at *4 (N.D. Tex. July 15, 2025) (finding that the second factor favored exclusion because "[defendant]'s failure to properly disclose [expert's opinions] prejudiced [plaintiff] in preparation for the upcoming trial").

*c. Possibility of a Continuance to Cure the Prejudice*

"[A] continuance of the discovery period[ ] deadline to designate any contravening expert witnesses and trial date could cure any prejudice faced by the party who received deficient expert disclosures." *Hawkins v. United States of Am.*, No. 3:24-cv-2341-X, 2026 WL 1556089, at *4 (N.D. Tex. June 1, 2026) (citing *Galvez*, 575 F. Supp. 3d at 758. But the Fifth Circuit has noted that "a continuance does not, in and of itself, 'deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders.'" *Barrett v. Atl. Richfield Co.,* 95 F.3d 375, 381 (5th Cir. 1996) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990)).

Here, BHDIC argues that a continuance would not cure any prejudice because it would cause additional delay and expense. *See* Dkt. No. 38 at 18. And the Court's Scheduling Order states that it "will not grant motions to continue the trial setting absent exigent circumstances." Dkt. No. 19 at 1 (emphasis omitted).

Discovery closed on May 22, 2026, *see* Dkt. No. 29, the dispositive motions deadline was June 22, 2026, *see id.*, and jury trial is set for November 2, 2026, *see* Dkt. No. 19. And, so, the undersigned agrees that a continuance will not cure the

prejudice here. *See Jones v. City of Dallas*, No. 3:22-cv-1477-L, 2024 WL 3669477, at *7-*8 (N.D. Tex. Aug. 6, 2024) (finding that "a continuance would not cure the prejudice" because it "would in all likelihood necessitate an extension of the discovery deadline that expired …, the [defendant]'s expert deadline, the deadline for challenging experts, and possibly the dispositive motion deadline"); *Fracalossi*, 2021 WL 5505604, at *13 (finding that "a continuance would not cure any prejudice" where a trial date has been set).

*d. Explanation for Failing to Disclose*

When responding to BHDIC's motion to strike Johnson's opinions and testimony, Mathew failed to provide an adequate explanation as to why she failed to properly disclose Johnson as a non-retained expert. *See* Dkt. Nos. 50 & 51. She states only that "Johnson is a non-retained expert whose opinions were formed in the ordinary course of his business, and Rule 26(a)(2)(C) requires only a summary of opinions, not the exhaustive detail BHDIC demands." Dkt. No. 51 at 13.

An argument that Mathew complied with the Rule – which the Court has already rejected – is not an explanation for why Mathew failed to comply.

And, so, Mathew's lack of explanation supports excluding Johnson's testimony and report. *See Jones v. City of Dallas, Texas*, No. 3:22-cv-1477-L, 2024 WL 3225626, at *2 (N.D. Tex. June 5, 2024) (finding that the fourth factor favored exclusion where plaintiff did "not offer any explanation for why she failed to disclose the unidentified experts"), *rec. adopted*, 2024 WL 3669477.

Considering the four factors holistically, the Court finds that Mathew's failure

to properly disclose Johnson was neither harmless nor substantially justified.

And, so, Johnson's opinions and testimony shall be excluded on the basis of Mathew's noncompliance with Rule 26(a)(2)(C).

## II. Motion to Strike Plaintiff's Expert Coltzer

BHDIC moves to strike the opinions and testimony of Mathew's expert, Coltzer. *See* Dkt. No. 40. Mathew responded, *see* Dkt. No. 47, and BHDIC replied, *see* Dkt. No. 56.

Coltzer's expert designation is as follows:

> A representative from WH COLTZER ("Coltzer") may be called to testify as to (1) the proper methodology and research necessary to provide accurate assessments of weather-related events and the impacts they may have on properties; (2) why and how weather-related events did or have damaged the property in question; (3) any other subjects or opinions referenced in its report or in subsequent deposition testimony, including reasonable inferences arising therein. The likely representative that will be testifying is Ben Scales, an International Institute of Building Enclosure Consultants (IIBEC) Registered Roof Consultant (RRC), Registered Roof Observer (RRO), Building Enclosure Risk Management Agent (BECx), and HAAG Certified Roof Inspector. As discovery continues, it may be necessary for Plaintiff to supplement this designation further.
>
> A description of the general substance of his opinions, observations, and conclusions are contained in his March 12, 2026, report, which was previously provided. Coltzer will offer rebuttal testimony responding to the opinions expressed by Defendant's designated expert(s) and he may testify consistent with his report, his qualifications, and any deposition testimony.

Dkt. No. 31 at 2.

### A. The Court will not strike Coltzer under *Daubert* or Rule 702.

1. Coltzer's opinions are relevant.

BHDIC contends that "WH Coltzer's opinions are irrelevant because they will

"not assist the jury in deciding a threshold issue – the date the claimed damage occurred." Dkt. No. 41 at 11. It argues that "WH Coltzer's report does not state that the damage actually occurred on the claimed date of loss of May 28, 2024." *Id.* at 12.

But, as explained above, "[e]xpert testimony is relevant if it assists the trier of fact in understanding the evidence or determining a fact in issue" – not every fact in issue. *Hall*, 2022 WL 2990912, at *4 (cleaned up).

Here, the Coltzer report opines on "whether the observed damage is consistent with wind forces associated with the severe thunderstorm event reported in the area on May 28, 2024" – a material fact in issue in this case. Dkt. No. 42-2 at 5. And the report provides more than "conclusory statements about how [Coltzer] arrived at" its conclusions. *Hilltop Church of Nazarene v. Church Mut. Ins. Co.*, No. 6:21-cv-322, 2022 WL 17823931 (E.D. Tex. Dec. 20, 2022).

Insofar as the Coltzer report fails to take note of other possible causes of the damage at issue, the Court should not, in its gatekeeping role under Rule 702 and *Daubert*, exclude a proffered expert witness's opinion because the facts underlying the opinion are incorrect. *See ENGlobal*, 2018 WL 1877015, at *8. To the extent that there could be other "variables," or causes of the alleged damage, placing the damage outside of the coverage period, that goes to weight, not admissibility, and BHDIC may elicit those purported weaknesses by cross-examining Coltzer's experts at trial. *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 589 (5th Cir. 2003).

2. Coltzer's opinions are reliable.

BHDIC argues that the Coltzer report is unreliable because Coltzer "did not

analyze, discuss, or consider whether wind events other than the May 28, 2024 event could have damaged Mathew's property." Dkt. No. 41 at 15.

But Coltzer was designated to testify about "why and how weather-related events did or have damaged the property in question." Dkt. No. 31 at 2. The report is not unreliable with respect to this designation. Dkt. No. 31 at 2.

The Coltzer report does not conclude that only the May 28, 2024 storm could have caused the alleged damage in this case. *See* Dkt. No. 42-2. Rather, the report concludes that "the observed conditions are consistent with wind-induced uplift forces associated with the severe thunderstorm event of May 28, 2024." *Id.* at 13; *cf. Hilltop*, 2022 WL 17823931, at *2 (excluding expert who opined that "the damage did not appear consistent with any cause other than the March 2019 storm event" because expert did not search for other storms outside 2019 and "provided nothing but conclusory statements about how he arrived at that conclusion").

Again, insofar as storms other than the May 28, 2024 storm could have caused the alleged damage, BHDIC may cross-examine Coltzer's representatives about those alternative sources of damage at trial.

And, in the report, its authors, William H. Coltzer, Jr. ("Coltzer, Jr.") and Benjamin R. Scales, articulate the factual basis for their opinions on the relevant issues by stating that

> [i]nformation considered in this evaluation includes the meteorological report prepared by Dr. M.J. Bunkers regarding the storm event, aerial drone imagery documenting the roof conditions, and engineering literature related to wind loads on buildings and roofing systems. Relevant industry standard and engineering principles concerning wind

> uplift forces at roof edges and parapets were also reviewed to assist in evaluating the observed damage patterns.

Dkt. No. 42-2 at 5.

And, so, the Court finds that Coltzer's opinions are relevant and reliable under *Daubert* and Rule 702.

**B. The Court will not strike Coltzer, Jr. under Rule 26(a)(2)(A) or Rule 403.**

BHDIC argues that Coltzer, Jr., specifically, should be stricken as an expert because he was "not identified as an expert on Mathew's initial or amended expert disclosures" in compliance with Rule 26(a)(2)(A). Dkt. No. 41 at 26.

Although Coltzer, Jr. was not named in Mathew's designation, he was listed as one of only two authors on the Coltzer report. *See* Dkt. No. 42-2 at 2. And, so, the Court is not convinced that the omission of Coltzer, Jr.'s name from the expert designation justifies striking Coltzer, Jr. *Cf. Vargas v. United States*, No. 5-21-cv-1277-FB-RBF, 2024 WL 1235593, at *6 (W.D. Tex. Feb. 12, 2024) ("[T]he designation of unnamed individuals or broad designation of all the nurses, physicians, and agents of an institution encompasses any number of potential experts or documents. Expecting Defendant to prepare to cross-examine based on a generic laundry list in these circumstances visits unfair prejudice on Defendant.").

BHDIC also argues that Coltzer, Jr.'s opinions should be stricken under Rule 403 because they are "needlessly cumulative" of Scales's opinions. Dkt. No. 41 at 26.

Mathew argues that Scales and Coltzer, Jr.'s opinions reflect a division of labor that is not cumulative because "[t]heir combined expertise provides the Court and

jury with comprehensive technical analysis that neither could offer independently." Dkt. No. 48 at 28. For example, Coltzer, Jr. "is a licensed architect with over 40 years of experience in construction, building envelope consulting, and dispute resolution," while "Scales holds specialized roofing credentials." *Id.*

"The Fifth Circuit does not 'impose a precise limit on the number of experts who can testify on a given area,' but 'discourage[s] attorneys from parading additional experts before the court in the hope that the added testimony will improve on some element of the testimony by the principal expert.'" *Matter of Savage Inland Marine, LLC*, No. 1:20-cv-122, 2021 WL 2935300, at *5 (E.D. Tex. Jan. 22, 2021) (quoting *Leefe v. Air Logistics, Inc.*, 876 F.2d 409, 411 (5th Cir. 1989)).

At this stage, the Court declines to exclude Coltzer, Jr.'s testimony because he and Scales appear to bring "different vantage points based on their respective professional backgrounds." *Id.* (citing *Sanchez v. Swift Transp. Co. of Ariz., LLC*, No. 4:15-cv-15-LG, 2017 WL 5643554, at *3 (W.D. Tex. July 19, 2017)). Insofar as BHDIC seeks to renew this objection at trial, it may do so then.

And, so, the Court denies the motion without prejudice to the extent that BHDIC moves to dismiss Coltzer, Jr.'s testimony as needlessly cumulative under Rule 403.

**C. Untimely Disclosures**

BHDIC asks the Court to exclude opinions of Coltzer that were given, for the first time, in Scales's and Coltzer, Jr.'s depositions in May 2026 and "are not present in WH Coltzer's disclosures or its report." Dkt. No. 41 at 19. The challenged opinions

are as follows:

a. Scales testified that he found "actual breaches in the roof" and that this opinion was not set forth in the WH Coltzer report. Coltzer, Jr. agreed and also discussed the breaches in the roof Scales identified.
b. Coltzer, Jr. testified that Scales's conversations with Mathew and her representatives and contractors informed his conclusion that the damage set out in the WH Coltzer report occurred on May 28, 2024 since the building was allegedly performing properly prior to that date.

*Id.* at 20 (citing Dkt. No. 42-4 at 5-6; Dkt. No. 42-1 at 39, 32-33) (cleaned up).

BHDIC argues that, because the depositions occurred after the expert deadlines of March 27, 2026 and 30 days thereafter, the new opinions are untimely. *See id.*; Dkt. No. 29.

1. <u>The Court strikes Scales's testimony regarding actual breaches.</u>

Mathew asserts that the findings regarding breaches in the roof are permissible supplementation under Rule 26(e). *See* Dkt. No. 48 at 22.

In his deposition, Scales testified that there was no section in the March 12, 2024 Coltzer report discussing actual breaches. *See* Dkt. No. 42-4. Rather, he "went back out on April 22nd and that's when [he] got on the roof and found the breaches." *Id.* And, so, the Court is not convinced that Scales's description of actual breaches "provides additional factual detail and confirmation of conditions already described in the report," as Mathew contends. Dkt. No. 48 at 22. Nor is the Court persuaded that such discoveries were not previously available to Scales.

And, so, the Court finds that Scales's opinion regarding actual breaches are not supplemental, and it will exclude those opinions as untimely unless the failure to disclose was substantially justified or harmless.

*a. Importance of the Evidence*

The parties agree that the testimony regarding actual breaches in the roof is not important. BHDIC contends that the evidence is not important because "neither Scales nor Coltzer, Jr. opine as to the extent of interior water damage resulting from these breaches." Dkt. No. 41 at 22. And Mathew agrees that their opinions "do not depend on identifying specific breaches or mapping interior damage to exterior openings." Dkt. No. 48 at 25.

And, so, this factor weighs in favor of excluding the testimony.

*b. Prejudice to the Opposing Party of Including the Evidence*

BHDIC contends that "the deficient designation precluded BHDIC from offering rebuttal evidence from its own experts" and deprived them of the chance to fully prepare for the Coltzer depositions. Dkt. No. 41 at 23.

Mathew argues that "BHDIC deposed Scales on May 5, 2026, more than one month before the discovery deadline of May 22, 2026," so it "had ample opportunity to explore Scales'[s] testimony regarding breaches, to conduct its own inspection, to obtain rebuttal expert analysis, and to take supplemental discovery if necessary." Dkt. No. 46 at 25.

On one hand, Scales was deposed after the April 22, 2026 inspection and before the close of fact discovery. On the other hand, the gap between the deposition and the discovery deadline was only two weeks – not over a month, as Mathew asserts – and this case is set for trial on November 2, 2026. *Cf. Everest Reinsurance Co. v. Cox*, 350 F.R.D. 541, 556 (N.D. Tex. 2025) (finding no prejudice where trial date was vacated

and defendant had "ample time" to review new materials); *Aircraft Holding*, 2022 WL 3019795, at *3 n.3 (finding prejudice from untimely disclosure was "lessened by the fact that the report was filed over nine months before the trial setting").

On balance, the Court finds that this factor is neutral.

*c. Possibility of a Continuance to Cure the Prejudice*

Mathews concedes that "a continuance would not cure any prejudice because BHDIC already deposed Scales after the April 22 inspection and full opportunity to explore his findings. Further delay would serve no purpose beyond protracted litigation." Dkt. No. 48 at 26.

And, so, this factor weighs in favor of exclusion.

*d. Explanation for Failing to Disclose*

Mathew explains that the April 22, 2026 inspection was meant to "verify findings from earlier drone inspections." Dkt. No. 48 at 26. Mathew elaborates that "the timing of this inspection was driven by legitimate logistical considerations including weather, scheduling, and the need for a safety assistant." *Id.*

This explanation is too vague to persuade the Court that Mathew's failure to conduct a closer inspection of the roof before the close of expert discovery was substantially justified. And, so, this factor slightly favors exclusion.

Viewing the four factors holistically, the Court excludes Scales's testimony regarding actual breaches on the roof.

2. <u>The Court will not strike Coltzer, Jr.'s testimony regarding conversations with Mathew.</u>

In his deposition, Coltzer, Jr. testified that Scales's understanding "that the

building was performing properly prior to May 28, 2024" was informed by discussions Scales had with Mathew and "the people that were handling the building for her." Dkt. No. 42-1 at 32. Coltzer, Jr. conceded that the Coltzer report did not discuss the content of those conversations. *See id.* at 32-33. And Scales testified that he did not use or rely upon any information gathered from Mathew when forming the opinions in his report. *See* Dkt. No. 42-4 at 12.

Mathew argues that this testimony is not untimely because "experts are permitted under Rule 703 to base opinions on facts or data they have been made aware of or personally observed, provided experts in the field would reasonably rely on such information," and that these bases do "not require separate disclosure as an independent 'opinion.'" Dkt. No. 48 at 23 (citing FED. R. EVID. 703).

As discussed above, the Coltzer report concludes that the observed damage was consistent with the May 28, 2024 storm, but it does not purport to rule out other potential causes of the damage. *See* Dkt. No. 42-2 at 5, 13. Indeed, the Coltzer report does not address the conditions of the roof before May 28, 2024. *See* Dkt. No. 42-2.

But BHDIC does not move to strike Coltzer, Jr.'s testimony that the building was performing properly before May 28, 2024. Rather, BHDIC appears to ask the Court to strike Coltzer, Jr.'s testimony regarding discussions with Mathew and her representatives that may have informed this opinion. In doing so, it points out that Scales did not rely on those discussions for the Coltzer report. *See* Dkt. No. 41 at 23.

BHDIC has not met its burden to show that this testimony is an untimely opinion. And, so, on the record before it, the Court declines to strike Coltzer, Jr.'s

testimony regarding these discussions as untimely under Rule 26.

**Conclusion**

The Court GRANTS Defendant Berkshire Hathaway Direct Insurance Company's Opposed Motion to Strike the Opinions and Testimony of Plaintiff's Non-Retained Testifying Expert Justin Johnson [Dkt. No. 37] and strikes Plaintiff Jaya Mathew PHD PLLC, doing business as Wellness 360's expert Justin Johnson.

And the Court GRANTS IN PART AND DENIES IN PART Defendant's Opposed Motion to Strike the Opinions and Testimony of Plaintiff's Retained Testifying Expert "WH Coltzer c/o Benjamin Scales" [Dkt. No. 40] and strikes only Plaintiff's expert Benjamin Scales's testimony regarding actual breaches.

SO ORDERED.

DATED: September 8, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE